# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Z. W. SKINNER, Minor.

UNPUBLISHED
September 12, 2017

No. 336650
Livingston Circuit Court
Family Division
LC No. 2015-015051-NA

Before: Hoekstra, P.J., and Meter and K. F. Kelly, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating his parental rights to a minor child under MCL 712A.19b(3)(c)(*i*), (g) and (j). We affirm.

## I. STANDARD OF REVIEW

This Court reviews for clear error decisions regarding the establishment of statutory termination factors and regarding whether termination is in the child's best interests. *In re Rood*, 483 Mich 73, 90-91; 763 NW2d 587 (2009); *In re JK*, 468 Mich 202, 209; 661 NW2d 216 (2003); MCR 3.977(K). To be clearly erroneous, a decision must be more than maybe or probably wrong. *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009). Clear error exists "if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

## II. STATUTORY GROUNDS AND REASONABLE REUNIFICATION EFFORTS

The trial court did not clearly err in finding that there was clear and convincing evidence to support the statutory grounds for terminating respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (g) and (j), which provide:

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

\* \* \*

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial

-1-

dispositional order, and the court, by clear and convincing evidence, finds . . . the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

There was no clear error in the finding that the conditions that led to the adjudication continued to exist and would not likely be rectified within a reasonable time. Respondent and the child's mother had a long history of substance abuse, mental health issues, domestic violence struggles, criminality, housing instability, and insufficient finances. At the plea hearing leading to the adjudication, respondent testified to a criminal history involving illegal substances and domestic violence. In establishing the factual basis for respondent's plea, a caseworker indicated that respondent had the child with him during the commission of a larceny and also had the child with him while driving to Detroit with two other adults to purchase heroin. The caseworker indicated that respondent was unable to care for the child due to ongoing criminality and incarceration. Respondent admitted to having unstable housing and to using drugs.

Respondent was ordered to comply with and benefit from a treatment plan to address, in part, substance abuse, emotional instability, and inappropriate housing. Petitioner was to provide and respondent was to participate in domestic-violence counseling, random drug screens, parenting classes, employment assistance, housing assistance, and family team meetings. Respondent was to participate in a psychological evaluation and substance-abuse assessment and follow recommendations. Petitioner's ability to provide services was limited because of respondent's incarceration. Nonetheless, the caseworker facilitated a substance-abuse assessment and psychological evaluation while respondent was incarcerated. The psychological evaluation and substance-abuse assessment recommendations included: random drug and alcohol screens for at least three months after respondent's release from jail, substance-abuse and mental health treatment, weekly support group meetings to help respondent maintain his sobriety, and a psychiatric evaluation to determine any underlying mental health issues that may have contributed to his substance use.

At the termination hearing, which began on November 16, 2016, respondent explained that his relapse-prevention plan was to "attend groups . . . to think about my thinking more, to be

able to use my support group, to be able to um, you know, set goals and prioritize things . . . employment is a big thing . . . being able to budget things . . . utilize the tools that I am -- that I am learning and uh, realize my own red flags . . . ." After his release from jail on October 4, 2016, respondent found full-time employment. He also enrolled in a group-counseling program that was required by his parole.[1] However, respondent did not enroll in individual counseling. Significantly, respondent tested positive for alcohol three times within weeks of being released from jail. Respondent knew that consuming alcohol was prohibited by his parole conditions. Respondent understood that if he violated his parole he would return to jail. Despite the positive screens, respondent claimed at the termination hearing that his substance issues were "all behind [him]."

During several periodic review hearings and at the termination hearing, respondent claimed that he intended to rise to the responsibility of properly caring for his child, despite his previously unsuccessful attempts to achieve a substance-free lifestyle and comply with parole conditions, and others testified that he was "different" this time. As noted by petitioner in closing arguments, however, respondent's choice to drink alcohol in violation of his probation within weeks of his release from jail, knowing that his parental rights hung in the balance, was telling.

According to respondent's June 21, 2016, psychological evaluation, respondent had a "vitriol[ic] temper" and "a pervasive (long-term) history of antisocial or imperturbable behaviors," and "[h]is recent parole violation of driving a girlfriend to Detroit for replenishment of drug supplies further showed a blatant disregard for rules, court orders, and legal ramifications. He acted with a sense of impunity, selfishly and recklessly driven to engage in unlawful behaviors. Historically, he demonstrated recurrent invincible behavior patterns while assisting in the [methamphetamine] labs and later when falsifying medical information to receive psychostimulants from the physician's office (while on probation)." Respondent needed therapy to address "impulse control, anger management, relapse prevention, parental skills, prevention of serial attraction syndrome problems, housing and job stabilization." The evaluator noted:

> Given [respondent's] current motivation to reunite with his child, he may outwardly and initially espouse convictions to participate and comply with therapy and even demonstrate a holiday period of 1-2 months of therapeutic progress. However, prognostically, he presents a high risk of therapy attrition or failure to meet the complete the (sic) court-ordered therapeutic objections . . . . His promises, historically, occurred with alacrity (no or poor follow through).

The trial court did not clearly err in concluding that the conditions that led to the adjudication continued to exist and that there was no reasonable likelihood that they would be rectified within a reasonable time given respondent's long history with substance abuse and previous unsuccessful attempts to achieve sobriety, coupled with his lack of progress immediately upon his most recent release from jail.

---

[1] There was no evidence that he attended any sobriety support group such as AA/NA.

The evidence similarly supported the trial court's decision to terminate respondent's parental rights pursuant to MCL 712A.19b(3)(g). There was evidence of a failure to provide proper care and custody. In addition, the evidence indicated that respondent would not be able to provide proper care and custody in the foreseeable future. Indeed, he chose to drink alcohol despite the potential consequences. Moreover, deference is given to the trial court's special opportunity to judge the credibility of witnesses. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989). The lower court reasonably concluded that respondent's and his mother's testimony was not particularly credible. She was unable or unwilling to admit to the gravity of respondent's alcohol consumption despite her reported experience as a substance-abuse counselor and the fact that both she and respondent's father had had problems with alcohol. The trial court properly determined that her support, on which respondent would continue to rely, was inadequate. Given that respondent's support structure was not solid, it was unlikely that he would be able to provide proper care and custody for the child.

The trial court also did not clearly err in terminating respondent parental rights pursuant to MCL 712.19b(3)(j). Respondent's testimony illustrated his lack of insight or accountability. A court may consider a parent's testimony that indicates a lack of judgment, insight, and empathy for the child in terminating parental rights pursuant to subsection (j). *In re Utrera*, 281 Mich App 1, 25; 761 NW2d 253, 269 (2008). In June 2015, respondent was found with drug paraphernalia in his car, which he claimed belonged to a known substance abuser. Respondent was jailed for three days and released. The following month, respondent took his child with him while driving two drug users to Detroit to buy heroin. Respondent clearly demonstrated an utter lack of parental judgment by taking his child with him to Detroit to buy heroin. Respondent then, after another release from jail, violated the terms of his release. The record shows that respondent has a lengthy history of substance abuse, chronic unemployment and insufficient income, housing instability, domestic violence, and criminal behavior and failing to meet parole conditions, which demonstrated a serious risk of harm to the child. Notably, a court may rely on a parent's history in determining whether the child would be harmed if returned to the parent's care. *In re Archer*, 277 Mich App 71, 75; 744 NW2d 1, 5 (2007).

Respondent contents that petitioner failed to make reasonable reunification efforts and that he was denied a meaningful opportunity to participate in his service plan because he was in jail. This contention is groundless. Petitioner must make reasonable efforts to reunify a family in the absence of aggravated circumstances. MCL 712A.19a(2); *In re LE*, 278 Mich App 1, 18; 747 NW2d 883, 894 (2008). However, respondents are responsible for participating in offered services. *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). Also, parents must sufficiently benefit from the services provided to them in order to regain custody of their children. *Id*. Although defendant relies on *In re Mason*, 486 Mich 142, 160; 782 NW2d 747 (2010), to argue that petitioner was required to make greater efforts, to successfully claim a lack of reasonable reunification efforts a respondent must establish that he or she would have fared better if the petitioner had offered other services. *In re Fried*, 266 Mich App 535, 543; 702 NW2d 192, 198 (2005).

Petitioner cannot mandate that the sheriff allow respondent to receive during his incarceration every conceivable service that might rectify the conditions that led to the child's

removal. Nonetheless, petitioner arranged for respondent's substance-abuse assessment and psychological evaluation while he was still incarcerated to guide his treatment upon release.

Respondent claims that his procedural due process rights were violated, relying on *In re Rood*, *supra*, and that his parental rights were terminated solely because of his incarceration, contrary to *In re Mason*, *supra*, and *In re Pops,* 315 Mich App 590; 890 NW2d 901 (2016). These claims are meritless. Respondent was provided with the opportunity to participate in all of the court proceedings. He was represented by counsel and appeared for all of the hearings. The caseworker regularly contacted respondent and prepared a treatment plan, and respondent had the opportunity to engage in services that could be offered during his incarceration. Respondent was given the opportunity to demonstrate compliance with and benefit from services after his release. Unlike the father in *Pops*, 315 Mich App at 598-599, respondent did not meaningfully engage in services and stay substance-free while he was no longer incarcerated.

### III. BEST-INTERESTS DETERMINATION

The trial court also did not clearly err in finding, by a preponderance of the evidence, that terminating respondent's parental rights was in the child's best interests. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). The trial court may consider such factors as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*. at 41-42 (citations omitted). It may also consider the likelihood that the child could be returned to the parent's home in the foreseeable future, *In re Frey*, 297 Mich App at 248-249; 824 NW2d 569 (2012), as well as evidence that the child is not safe with the parent, *In re VanDalen*, 293 Mich App 120, 141; 809 NW2d 412 (2011).

There was evidence that respondent had a tenuous bond with his child. Upon respondent's release from jail, respondent's sister drove the child from the Upper Peninsula to see respondent, and the child was understandably unenthusiastic given respondent's frequent absences from his life because of respondent's criminality and substance abuse. At the time of the termination hearing, respondent had been incarcerated for a large portion of his young child's life. As aptly noted by the trial court, "the bond Father shares with his child has been encouraged more by the actions of relatives, rather than by Father." Respondent argues that the best-interests determination was improper because the child was in placement with a relative, and that weighs against termination. However, the trial court explicitly addressed placement with a relative when making its best-interests determination, as required by *Olive/Metts*, 297 Mich at 43. A trial court must consider the stability and permanency for the child when considering terminating parental rights rather than continuing temporary wardship to allow the parent additional time to complete services over a lengthy period. *In re McIntrye*, 192 Mich App 47, 53; 480 NW2d 293, 296 (1991). Here, the child had a documented history of trauma. Respondent admitted that he had never provided his child with long-term stability, and testified that the relative was willing and able to provide his child with a safe, appropriate, and permanent home. The trial court reasonably concluded:

This Court cannot find that it would be in this child's best interest to remain in limbo with a relative wondering when, or if, his parents may make his custody their priority and then actually achieve the ability to provide him with a safe and stable home. The relative is willing to provide the child with permanency.

[The child] needs stability and the assurance of not being abruptly and constantly removed from his home. He needs to know where he may call home. The therapist for this child believed the child needed to be able to identify his caretaker to promote stability. This Court cannot see how continued foster care placement, or even guardianship for a six year old, with the looming possibility of undoing that arrangement in ten, six, or four years can provide a child with any sense of security or understanding of where he will grow up, where he will spend his holiday, or with whom he can identify as his stable, supportive parental figures. Leaving [respondent's] parental rights intact could potentially jeopardize the child's stability and future permanency as well as emotional wellbeing, which would not serve the child's best interest.

The trial court did not clearly err in finding that the child needed stability and permanency that respondent could not provide within the foreseeable future. Children should not have to wait indefinitely for parental reformation and rehabilitation. The trial court did not clearly err in finding that terminating respondent's' parental rights was in the child's best interests.

Affirmed.

/s/ Joel P. Hoekstra
/s/ Patrick M. Meter
/s/ Kirsten Frank Kelly